Joanne O. EHRENREICH, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE of the United States of America, Social Security Administration, Washington, D. C., Defendant.

No. Civ–74–12.

United States District Court,
W. D. New York.

Jan. 21, 1977.

Nathaniel A. Barrell, Buffalo, N. Y. (Bernard B. Freedman, Buffalo, N. Y., of counsel), for plaintiff.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (James A. Fronk, Buffalo, N. Y., of counsel), for the Government.

CURTIN, Chief Judge.

This suit was initially brought pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of a final decision of the Secretary of Health, Education and Welfare denying plaintiff's application for widow's insurance benefits based on disability under §§ 202(e) and 223(d) of the Act, 42 U.S.C. §§ 402(e), 423(d). In the earlier proceedings, this court determined that the Secretary's decision was not supported by substantial evidence insofar as it relied heavily on the opinions of a non-examining medical adviser which were contrary to the conclusions reached by two examining physicians. *Ehrenreich v. Weinberger*, 397 F.Supp. 693, 698 (W.D.N.Y. 1975). *See Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The instant matter was therefore remanded to the Secretary on June 27, 1975, under § 205(g) of the Act, 42 U.S.C. § 405(g), in order to take additional evidence of plaintiff's mental and physical condition. *Ehrenreich, supra,* at 698.

Pursuant to the court order of remand, the Appeals Council of the Bureau of Hearings and Appeals of the Department of Health, Education and Welfare arranged for general consultative medical and psychiatric evaluations. Upon receipt of the findings of those supplemental evaluations as well as a report from a non-examining medical adviser, the Appeals Council con-

cluded on March 11, 1976 that plaintiff's impairments were not severe enough to permit entitlement to the widow's disability benefits claimed. 42 U.S.C. § 423(d)(2)(B). *See also* 20 C.F.R. § 404.1504 and Appendix to Subpart P. Plaintiff again seeks judicial review of this final decision of the Secretary. The matter is now before this court on cross-motions for summary judgment and on a motion by plaintiff to correct an omission in the transcript of the administrative record.

## MEDICAL EVIDENCE PRIOR TO THE REMAND

As stated in the earlier decision in this case, "the single issue now before the court is whether the Secretary's decision is supported by substantial evidence." *Ehrenreich, supra,* at 694. The facts contained in the original record were not in dispute. Briefly summarized, plaintiff claims disability benefits as a widow based on her inability to work since 1963 due to a heart condition, a spastic colon, tension, depression, severe backaches, severe headaches, incontinence and shortness of breath. Dr. Anthony M. Aquilina, an internist, and Drs. Norman Chassin and C. S. Narasi, plaintiff's attending physicians, examined the plaintiff. Dr. Oliver J. Bateman, who did not examine the plaintiff, reviewed the medical evidence in his capacity as medical adviser. He determined that plaintiff's impairments were not sufficient to meet that statutory standard. However, Dr. Bateman's opinion, upon which the administrative law judge relied heavily, was contrary to the findings of Drs. Chassin and Narasi. This court therefore remanded the case to take additional evidence of the plaintiff's mental and physical condition. *Ehrenreich, supra.*

## MEDICAL EVIDENCE SUBSEQUENT TO THE REMAND

Plaintiff underwent several psychological and intelligence tests administered by Rev. Stephen Gerencser, Ph.D., a certified psychologist. In his report of September 30, 1975, Dr. Gerencser concluded that plaintiff is not impaired intellectually, but that her functional capacity is limited due to hypochondriac-conversion symptoms. His tests disclosed that although emotional adaptation to new situations would not be easy due to her age, plaintiff is able to communicate, make customary judgments, and read and write fluently.

Miss Polly Taylor, a psychiatric social worker, interviewed the plaintiff and reported her to be a "lonely, socially and physically limited woman with little energy for life."

Dr. Norman Heilbrun, a certified radiologist, took x-rays and fluoroscopes of plaintiff's chest and esophagus. His report indicated that there was a "slight increase of the cardio-thoracic ratio and slight prominence of the left ventricle, but no further abnormalities of the cardiac outline." He also reported an "indentation of the upper esophagus . . . probably of no clinical significance."

Dr. David C. Dean, a cardiovascular specialist, reported the same findings as Dr. Heilbrun. Dr. Dean did not, however, reach a diagnosis of plaintiff's condition. He hypothesized that her complaints of chest pain might be due to coronary artery disease or to cervical osteoarthritis, but was not sure and would not recommend a particular type of further testing that may have settled the question.

Dr. Roderick A. Charles, a psychiatrist and neurologist, examined the plaintiff, diagnosing her as "a hysterical personality in a gross situation and depression." Dr. Charles noted, however, that plaintiff appeared mentally alert and capable of relating to other persons "fairly well." The second part of Dr. Charles' report, a supplemental form questionnaire prepared by the Appeals Council containing questions on the extent of plaintiff's psychiatric impairment, recommended psychotherapy and/or medication as treatment to improve plaintiff's condition.

Dr. Armon A. Cairo, an internist and psychiatrist serving as a medical consultant to the Bureau of Hearings and Appeals, analyzed the medical evidence admitted into the record before and after the remand

and prepared a medical judgment for the Appeals Council without examining the plaintiff. In his report, Dr. Cairo summarized the medical findings and diagnoses of Drs. Heilbrun, Dean and Charles. He went on to provide his own interpretation of Dr. Gerencser's conclusions, *viz.*, that what the latter had meant was that plaintiff's motivation was less than it could be. Dr. Cairo discounted Miss Taylor's social report that plaintiff is lonely and socially and physically limited, citing his own view of the situation such as plaintiff's many letters seeking to obtain a variety of needs, including a disability rating, permission to own and operate a car, etc. Dr. Cairo also discounted the conclusions of Drs. Chassin and Narasi on grounds that there was a lack of objective medical data to support their diagnoses. In addition, Dr. Cairo's report made brief reference to the opinion of Dr. Bateman, the non-examining physician in the prior proceedings. Finally, Dr. Cairo summarized other documents in the record, including EKG and x-ray reports, minor diagnoses by other doctors, letters written by plaintiff, and other correspondence relative to her condition. Dr. Cairo's conclusion, based on the medical evidence demonstrated by clinical and laboratory diagnoses, was that plaintiff does not have an impairment listed in the Appendix to Subpart P, nor do her symptoms considered singly or in combination, constitute an impairment or impairments "medically equivalent to any listed impairment."

## RECORD OMISSION

The proposed documents for the supplemental record were forwarded to the plaintiff by the Appeals Council on February 13, 1976. Plaintiff was allowed ten days from that date for any comments and additional evidence to be submitted. Plaintiff's counsel sent a letter dated February 23, 1976 to the Appeals Council which objected to the admission of Dr. Cairo's report into the record and to the admission of one of the medical reports, the last sentence and signature of which he deemed illegible. However, the letter was misrouted within the Department of Health, Education and Welfare and did not "surface" until after the supplemental record had been deemed complete and certified. Plaintiff has moved to correct the omission of the letter from the record, while the defendant contends that the omission is merely harmless error.

Plaintiff's February 23 letter objected to Dr. Cairo's report in light of the prior decision in this case, because he was a non-examining physician rendering conclusions based upon second-hand medical evidence. As pointed out in the earlier decision though, the Supreme Court has condoned the offering of a medical opinion by such an individual, at least where it does not differ from the medical reports of examining physicians. *Richardson v. Perales, supra.* The Court noted the use of such medical advisers in complex cases for explanation of medical problems in terms more understandable to laymen. The opinion of the medical adviser, while not conclusive, can thus be considered along with the rest of the evidence and Dr. Cairo's report was therefore correctly included in the record. *See Ehrenreich, supra,* at 696.

The allegedly illegible medical report was the questionnaire completed by Dr. Charles. Ordinarily, a remand for clarification and supplementation has been deemed appropriate where medical records crucial to a plaintiff's claim are illegible either because of the poor quality of reproduction in the record, the handwriting of the physician, or both. *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir. 1975). In *Cutler* much of "the medical evidence before the administrative law judge consisted primarily of medical reports, many of which were . . . illegible." *Id.* at 1284. The Second Circuit felt that under such circumstances, it could not "determine whether the Secretary fully understood some of the medical reports before him," *id.,* and remanded partly for that reason. In the instant matter, on the other hand, the allegedly illegible parts of the questionnaire are readable, the signature is nearly identical to that of Dr. Charles which appears on the first part of his report, and the

last line of the questionnaire reads: "Pt [patient] being adequately treated—Goal would be maintenance." In fact, this questionnaire is cited in plaintiff's brief and attributed to Dr. Charles. It appears, therefore, that this report may be admitted to the record without prejudice to the plaintiff.

■ We must conclude that the omission of plaintiff's letter from the record constitutes no more than harmless error, and plaintiff's motion to require correction of that omission is therefore denied. *See Kerner v. Celebrezze,* 340 F.2d 736, 740 (2d Cir.), *cert. denied,* 382 U.S. 861, 86 S.Ct. 121, 15 L.Ed.2d 99 (1965); *O'Kon v. Roland,* 247 F.Supp. 743, 746 (S.D.N.Y.1965); 5 U.S.C. § 706; 28 U.S.C. § 2111.

## THE SECRETARY'S DECISION

■ To qualify for the type of benefits sought here, a widow must establish that she has an impairment or combination of impairments listed in or medically equivalent to those listed in the Appendix to Subpart P, 20 C.F.R. § 404.1504. *See also* 42 U.S.C. § 423(d)(2)(B). Such impairments are determined by evaluation of medical evidence, including the judgment of one or more physicians "designated by the Secretary." 20 C.F.R. § 404.1505(b). The sole concern here is with the severity of the impairment or its equivalent. *Ehrenreich, supra,* at 694. *See also Petruzzi v. Weinberger,* 394 F.Supp. 182, 184 (W.D.Pa.1975).

■■ In evaluating plaintiff's claim, the Appeals Council summarized and reviewed all the medical evidence received subsequent to the remand. It was determined that the data obtained from the consultative examinations revealed no significant clinical or laboratory findings of physical or emotional abnormalities, and that while plaintiff does have several subjective complaints, no etiological or functional restrictions were established. It was noted in the Appeals Council findings that plaintiff has a mild cardiovascular impairment, mild osteoarthritis of the cervical and lower spine, and mild depression and anxiety. Nevertheless, the Council concurred with Dr. Cai-

ro's conclusion that plaintiff does not have an impairment or combination of impairments medically equivalent to anything listed in the Appendix to Subpart P. The Appeals Council determined that Dr. Cairo had evaluated plaintiff's impairments in light of the results of the clinical and laboratory diagnostic tests performed by all of the physicians who examined her. The opinions of Drs. Chassin and Narasi were entitled to great weight since the two doctors were her treating physicians. However, their opinions were unsupported by objective medical data. *See Pergande v. Secretary, Health, Education and Welfare,* 351 F.Supp. 377, 383 (W.D.Wis.1972); *Mullen v. Gardner,* 256 F.Supp. 588, 590 (E.D.N.Y.1966). On the other hand, Dr. Cairo's conclusions were substantiated and corroborated by the clinical and laboratory tests conducted by Drs. Aquilina, Heilbrun, Dean and Charles. Even without the opinions of Drs. Cairo and Bateman, the two non-examining physicians, sufficient medical evidence exists to support the final decision of the Secretary. In this situation, substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might expect as adequate to support a conclusion." *Richardson v. Perales, supra,* 402 U.S., at 401, 91 S.Ct., at 1427; *Chernicoff v. Richardson,* 400 F.Supp. 448, 450 (W.D.N.Y.1975). The decision of the Secretary was clearly based on the substantial evidence on the whole record, and is hereby affirmed.

Defendant's motion for summary judgment is therefore granted and plaintiff's cross-motion for summary judgment is denied.

So ordered.